## OKLAHOMA UNION RY. CO. v. LYNCH.

No. 14869—Opinion Filed June 30, 1925.

1. **Appeal and Error—Review—Verdict on Conflicting Evidence.**

In an action at law, where the evidence is conflicting, this court will not review the evidence to ascertain where the weight of the evidence lies; and, if there is evidence reasonably tending to support the verdict, it will not be set aside.

2. **Street Railroads—Negligence of Speed—Jury Question.**

In a town or city where there is no ordinance regulating the rate of speed at which street cars shall be operated, it is for the jury to determine in the given case whether or not the speed at which the street car was operated was negligence under all of the facts and circumstances.

3. **Negligence—Contributory Negligence for Jury.**

The question of contributory negligence cannot be made a question of law for the court by demonstration or otherwise under our Constitution, article 23, section 6, but in all cases is a fact for the jury to determine, and the finding of the jury upon this defense is conclusive upon the court.

4. **Appeal and Error—Invited Error—Evidence.**

Where defendant cross-examines a witness on an issue not tendered by plaintiff's petition and requests an instruction embodying such issues and the court gives the instruction with slight modification, without objection on the part of of the defendant, he cannot complain of the evidence on such issue.

5. **Street Railroads—Dangerous Crossings—Lack of Safeguards as Negligence—Instruction.**

Where the evidence shows the street crossing the car track is in a populous neighborhood and greatly traveled and the view

of the track and approaching cars is obstructed and other facts of extraordinary danger, it is not error for the court to instruct the jury that it is a question of fact for them to determine whether or not the defendant was negligent in not maintaining gates, a flagman, a system of automatic bells, or some other appliance to warn travelers of the approach of cars, although no statute or city ordinance required these precautions.

**6. Appeal and Error—Harmless Error—Erroneous Instruction—Personal Injury.**

Where there is no evidence of permanent injury, and the court instructs the jury that they may take into consideration such injury, and the verdict returned is not excessive, and defendant failed to ask for a correct instruction, he cannot complain on appeal and the error will be considered as harmless.

**7. Appeal and Error — Objections Below— Competency of Witness.**

In order to raise the question of the competency of the witness to testify, the objection must so state, otherwise the question of competency cannot be urged on appeal.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Creek County; John L. Norman, Judge.

Action by W. D. Lynch against Oklahoma Union Railway Company, for damages on account of personal injuries. Judgment for plaintiff, and defendant appeals. Affirmed.

Biddison & Campbell and J. H. Grant, for plaintiff in error.

Streeter Speakman, for defendant in error.

Opinion by THREADGILL, C. Defendant in error, as plaintiff, brought suit against the plaintiff in error, as defendant, for damages on account of personal injuries sustained in a collision of a Ford automobile, in which he was riding, with a street car of said defendant, at the intersection of Cobb avenue with the railway track in Sapulpa, Okla. For convenience the parties will be referred to as they were in the trial court.

Plaintiff filed his petition on November 23, 1922, in which he stated, in substance, that the accident and injury took place on August 8 1922; that he was riding in the Ford touring automobile owned and driven by his daughter, Lillian Miller; that they were traveling along Cobb avenue westward, between the Burnett Refinery addition and the Moman addition to the city of Sapulpa, about five o'clock in the afternoon; that the railroad of defendant crosses Cobb avenue running in a southwesterly and northeasterly direction; that an embankment is thrown up about six feet upon which said railroad track is laid; that just north of Cobb avenue, on the right-hand side, as you travel west toward the crossing, and a short distance from the embankment and immediately adjoining the said embankment of said railroad, there is a small frame dwelling house, owned, controlled and possessed by defendant; that this dwelling house shuts off the view of the railroad and approaching cars from the northeast; that there are other buildings and trees along the north side of said street and just east of said frame building, all of which shut off the view to approaching street cars from the northeast; that the company is negligent in maintaining the said dwelling house so that cars cannot be seen approaching from that direction; that Cobb avenue is a very public street and thickly traveled; that the defendant is negligent in failing to institute and maintain some electric or automatic bell or signal device or system or watchman at said crossing or any other means of warning to persons crossing the railroad at this place; that on account of the negligence of the defendant, as above described, preventing plaintiff from seeing the approach of the street car, and from having any warning of danger, and for the further reason that at the time the automobile was traveling up the said grade in a careful manner to cross the said track, the defendant's street car, approaching from the northeast, came at a rapid rate of speed and without sounding a whistle or giving any warning of its approach until very near the crossing, and while the said automobile was in the act of going over the track, the said car struck the same and crushed the front part of it and threw the plaintiff out about ten or fifteen feet and injured him, wrenching his back, hips, and left arm, and sent him to the hospital for repairs, and resulting in permanent injuries; that he had an earning capacity before he was injured of about $200 a month, which he had lost; that he was out $36 for medical attention and was not able to work or earn wages; that he suffered great mental anguish as well as physical pain, and he asked for judgment in the sum of $10,036.

The defendant filed its answer, consisting of a general denial, and further pleaded contributory negligence. The issues were tried to a jury and a verdict returned in favor of plaintiff in the sum of $2,500, and judgment

was rendered accordingly, from which the defendant has prosecuted this appeal.

1. In the first place, defendant contends that the evidence was not sufficient to go to the jury and not sufficient to sustain the verdict.

An examination of the record discloses that the evidence was very conflicting as to the rate of speed the interurban car was traveling, ranging from ten to 35 miles an hour, also as to whether or not any signal warning was given before the three sharp whistles about the time the collision occurred, the witnesess for plaintiff testifying that there was none and the witnesses for defendant testifying there was. The motorman said he sounded the whistle when about two blocks away, and the witness Patterson, who watched the street car come from the northeast and was looking for his mother on the same, and who was near the place where the motorman said he sounded the whistle, testified that there was no whistle until the three whistles just before the car struck the automobile. It was not disputed that there was no watchman or signal device maintained by the street car company to give warning of danger in crossing the car track. The defendant did not demur to the evidence of plaintiff, but answered it with testimony, and then asked the court to instruct the jury to return a verdict for defendant, which request was properly refused by the court. The questions involved under the conflicting evidence and all the evidence in the case were for the jury to determine.

In the case of Kugler v. White, 91 Okla. 130, 216 Pac. 903, a case similar to this one, the court lays down this rule in the syllabus:

"Where a cause is submitted to a jury, they are the triers of the facts, and it is not the province of the appellate court to weigh the evidence, and if there is any evidence in the record reasonably tending to support the verdict and judgment, and no substantial errors appear upon the trial, the judgment should not be disturbed on appeal."

Also, in the case of Mitchell v. Aaronson, 91 Okla. 82, 216 Pac. 102, the same rule is stated, as follows:

"It is the settled law of this state that on the question of primary negligence, where the evidence is such that reasonable men may fairly differ as to whether negligence is shown, the determination of such question is for the jury. It is only where the facts are such that all reasonable men must form the same conclusions from them that the question is considered as one of law for the court."

2. The question as to whether or not the defendant was negligent in the speed of the street car at the time of the accident was for the jury under all the facts and circumstances of the case. In a town or city where there is no ordinance regulating the speed with which street cars should be operated, the company may operate its cars at any rate of speed it sees fit to having due regard for the rights and safety of persons and vehicles having the right to cross the street car tracks, and the question of negligence, in any case of accident, is to be determined by all the facts and circumstances of the case. In the case of C., R. I. & P. Ry. Co. v. Barton, 59 Okla. 109, 159 Pac. 250, the court stated:

"Where, in the limits of a town, the speed of a train is not regulated by ordinance, a railway company may run its trains at any rate of speed consistent with the safety of such trains and persons rightfully on its premises, but this privilege does not give to such company the right to run into a station at an excessive rate of speed in utter disregard of the safety of persons rightfully upon its premises; such speed must be regulated with due regard for the safety of the public. Held, that whether there was excessive speed, and, if so, whether under facts and circumstances of the case such speed constituted negligence, is a question of fact to be determined by the jury." M., K. & T. Ry. Co. v. Stanton, 78 Okla. 167, 189 Pac. 753.

The general rule is laid down in 22 R. C. L. 947 and 948, as follows:

"A rate of speed that would be entirely safe under some conditions may, however, be recklessly dangerous under other conditions, and it is generally held that it is for the jury to determine whether or not the speed at which a train was operated was negligent under all of the circumstances."

3. Defendant further contends that the contention of plaintiff as to the line of vision being obstructed by the little house and other buildings preventing one from seeing the railroad track to the north, and street cars approaching from the northeast, is contrary to the physical facts in the case as shown by measurements and illustrated by the plat introduced and appearing in the record — citing the cases of Kesler v. Davis (Kan.) 207 Pac. 799; Lange v. Metropolitan St. Ry. Co. (Mo.) 132 S. W. 31; Huff v. Welch (Va.) 78 S. E. 573; Norfolk & W. R. Co. v. Strickler (Va.) 86 S. E. 824; Shepard v. Wichita Ice Co. (Kan.) 108 Pac. 819.

According to the plat the line of vision was not obstructed by the little house for 39 feet

from the center of the railroad track back east to a point about the middle of the street, at which point the plaintiff could have seen the railroad and approaching cars for a distance of 200 feet measured on the railroad track northeast from where the accident occurred, and the contention is that the plaintiff could have seen the street car down the track in time to stop before going across the track; that is, plaintiff should have seen the street car coming while the automobile was traveling 39 feet and in time to stop for the street car to pass, and failing to do so demonstrated contributory negligence. We do not think so. If the street car was traveling at the rate of 35 miles an hour, and there was evidence to that effect, it would only take about eleven seconds to run the 200 feet and the demonstration does not show how the plaintiff could have seen the street car before or during this 11 seconds in time to stop the automobile before getting on the track. It is evident the motorman did not see the automobile until too late to stop the car before reaching the crossing and the plaintiff did not see the street car until the automobile was on the track, or just before it come upon the track and, as a matter of fact, during the 11 seconds the street car was running the 200 feet the automobile was trying to stop, but failed to do so until on the track. The jury was warranted in believing that the street car was being operated too fast for the safety of the plaintiff. Defendant's measurements and plat are not sufficient to demonstrate plaintiff out of the court on the grounds of contributory negligence. This fact, under our Constitution, article 23, section 6, is a fact for the jury to determine in all cases whatsoever, and the finding of the jury upon this defense is conclusive upon the court. Dickinson v. Cole 74 Okla. 79, 177 Pac. 570; Sapulpa Refining Co. v. Sapulpa, 84 Okla. 93, 202 Pac. 780; C., R. I. & P. Ry. Co. v. Cole, 251 U. S. 54, 64 L. Ed. 133.

4. Defendant complains of the court admitting certain testimony on the part of the plaintiff to the effect that there were high weeds growing to the north of Cobb avenue along the railroad track, which obstructed the view of plaintiff and those with him in the automobile from the approaching train. Defendant contends that this was error because there was no allegation in the petition tendering this issue. The record discloses that this evidence was brought out by the cross-examination. The questions and answers were as follows:

"Q. You could see the track up there? A. No, sir; I could not. Q. You did not see the track at all? A. I never saw the track. Q. You looked up between those houses and did not see the track? A. Sure not. Q. Your eyesight was good? A. Sure. No, I could not see the track, nor you could not have seen it for them weeds. Q. It was the weeds that kept you from seeing the track? A. Yes, sir. Q. And you drove onto that track without seeing it? A. Why of course we drove onto the track. Q. Those were weeds between those two houses along the fence there? A. Yes, sir; that cut off the view of the track but I don't know how high they was, eight feet I expect, seven or eight. Q. About how high were those weeds? A. They were about, I suppose, seven or eight feet, about that high, I don't know."

The defendant requested an instruction covering all the obstruction to vision as follows:

"You are instructed that obstructions to vision, whether on or off the right of way of the defendant, do not constitute negligence on the part of the defendant, but that the existence of such obstructions is to be considered by you only as regulating the degree of care both plaintiff and defendant should use on approaching the crossing."

And this instruction was given with but slight modification in the court's general charge and without objection on the part of the defendant. It must, therefore, be presumed that the evidence complained of was competent for the purpose of showing the degree of care necessary to be observed by both parties in approaching the crossings. The defendant is bound by the instruction and is not in a position to complain of the evidence. M., K. & T. Ry. Co. v.Perino, 89 Okla. 136, 214 Pac. 907.

5. Defendant complains of the following instruction given by the court:

"You are instructed that the defendant is not required by the laws of this state to maintain any signal bells or watchman or other signal devices at crossings and that there is no duty resting upon railroads to install automatic signal devices or watchman at crossings unless such crossings are extraordinarily dangerous and busy crossings.

"However, you are further instructed in this connection that if you should find from a fair preponderance of the evidence that the crossing in question was an extraordinarily dangerous and busy street crossing, the question of whether ordinary care upon the defendant's part required that when approaching such crossing with its trains said defendant maintain gates, a flagman, a system of automatic bells or some other appliance to

# 150

115 Oklahoma Reports

warn travelers of the appproach of the train, although no statute or city ordinance has required any of those particular precautions, is a question of fact to be considered and determined by you upon a full consideration of all the facts and circumstances in evidence before you."

The objection is based upon the lack of evidence to warrant its being given. There was evidence as to the street being greatly traveled and being in a manufacturing district and of the view of the track to the northeast being obstructed by houses and tall growing weeds, and under the rule stated in the case of Wichita Falls & N. W. R. Co. v. Groves, Adm'r, the instruction was correct. However, the defendant is not in a position to complain of this point for the reason it recognized the very issue involved in the instruction by its requested instruction No. 2, which was as follows:

"You are instructed that the defendant is not required by the laws of this state to maintain any signal bells or watchman or other signal devices at crossings and that there is no duty resting upon railroads to install automatic signal devices or watchman at crossings unless such crossings are extraordinarily dangerous and busy crossings."

See Summers v. Gates, 55 Okla. 96, 154 Pac. 1159; Brissey et al. v. Trotter, 34 Okla. 447, 125 Pac. 1119; Standard M. & I. Co. v. Trades Co., 46 Okla. 356, 148 Pac. 1019; 14 R. C. L. 815; 58 Cyc. 1788.

6. Defendant further complains of the court's instruction number 22, to the effect that the jury should assess whatever amount they believed, from all the evidence, plaintiff was entitled to, as compensation for his injuries, if any, and, for such purposes, they could take into consideration his earning capacity at the time of his injuries, and whether or not the same were permanent, as well as his earning capacity at the time of the trial, and the sums expended for medical services. The ground of the complaint is based on the lack of evidence as to his permanent injuries. We have gone over the record carefully, and without quoting or reviewing the evidence here in detail, it was sufficient to show that he was badly injured, and his left arm was somewhat paralyzed as a result, and his right leg, hip, and back were injured to such an extent that he continued to suffer pain on account thereof, and his nerves were disturbed, and he did not sleep well, and he had not been able to work and he said he did not know whether this condition would continue or not. Before the injuries he worked at the carpenter's trade and made about $200 a month,

and since he was hurt he was not able to earn anything and it did not appear when he would be able. He was a man of 75 years of age; was well and able to work all the time before the accident, and, besides his suffering and his weakened condition, he did not know that he would ever be able to earn wages again. It may be that this testimony was not sufficient to be submitted to the jury as to the permanency of plaintiff's injuries. The jury awarded him $2,500 damages and this amount is not complained of as being excessive, and if the court committed error in charging the jury that they could consider the permanency of the injuries, the same would be harmless. Midland Valley R. R. Co. v. Kersey, 59 Okla. 9, 157 Pac. 139; Planters Cotton & Ginning Co. v. Penny, 53 Okla. 136, 155 Pac. 516; Dodson & Williams v. Parsons, 62 Okla. 298, 162 Pac. 1090; Potts v. Solinger, 79 Okla. 262, 192 Pac. 1099.

Again, it does not appear from the record that the defendant offered any correction or substitute for the instruction complained of, and this being the case, it cannot be heard to complain of the instruction. Muskogee E. T. Co. v. Richardson, 97 Okla. 61, 222 Pac. 265.

7. Defendant further complains that the court committed error in overruling its motion to strike the testimony of plaintiff as to the muscles of his hip perishing away, and as to the condition of the hip at the time of the trial. The record discloses that the plaintiff testified as to his injuries in his first examination and was afterwards recalled and restated the injuries and added that the muscles of his right hip had somewhat perished away since the accident, and explained: "The muscles of the hip right under the hip bone, that muscles there is smaller, flabby, loose." Defendant did not object to this evidence or to the competency of the witness at the time it was given, but at the close of its cross-examination of the witness, defendant moved the court to strike out the testimony with reference to the condition of the hip, the muscles of his hip perishing away. It did not state any ground for its motion.

In the first place, we do not think it would require an expert physician to explain the condition of the hip, as the plaintiff explained it, to make the evidence competent or the witness competent. Oklahoma Hospital v. Brown, 87 Okla. 46, 208 Pac. 785; Novak v. Miller, 97 Okla. 144, 223 Pac. 155; Midland Valley R. R. Co. v. Gibson, 94 Okla. 193, 221 Pac. 100.

As to the permanency of this condition it might require expert testimony to say. but not the condition as it existed at the time of the trial. In the second place, the defendant made no objection to the testimony at the time it was given, and in its motion to strike it it did not object on the ground that the witness was incompetent to testify, and it failed to save the question it raises for review on appeal. Miller v. Nanny, 91 Okla. 150, 216 Pac. 662; Eichoff v. Russell. 46 Okla. 512, 149 Pac. 146; Scanlan v. Barclay, 72 Okla. 86, 178 Pac. 674; Worrell v. Allen, 93 Okla. 3, 219 Pac. 367.

We think the defendant had a fair trial and substantial justice was meted out to the parties, and we therefore, recommend that the judgment of the court be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 853, § 2834; p. 859, § 2836. (2) 36 Cyc. p. 1618. (3) 36 Cyc. p. 1622. (4) 4 C. J. 710, § 2621; 38 Cyc. pp. 1788, 1789. (5) 36 Cyc. p. 1640. (6) 4 C. J. p. 1043. § 3027; 38 Cyc. p. 1695. (7) 3 C. J. p. 828. § 740. See under (1) 2 R. C. L. p. 194; 1 R. C. L. Supp. pp. 433-435; 4 R. C. L. Supp. p. 90, 5 R. C. L. Supp. p. 79. (2, 3) 20 R. C. L. p. 166; 3 R. C. L. Supp. 1040; 4 R. C. L. Supp. 1342, 5 R. C. L. Supp. p. 1085. (6) 14 R. C. L. p. 815; 3 R. C. L. Supp. p. 297, 5 R. C. L. Supp. p. 780.